PICKERING v PICKERING

Docket No. 253342. Submitted June 8, 2005, at Grand Rapids. Decided
    August 30, 2005, at 9:00 a.m.

   Stephanie D. Pickering brought an action in the Emmet Circuit
      Court seeking a divorce from John D. Pickering, physical custody
      of the children of their marriage, and a property division. The
      court, Richard M. Pajtas, J., granted the plaintiff physical custody
      of the two children and the defendant reasonable and liberal
      parenting time, awarded the plaintiff a 100 percent survivorship
      interest in the defendant's state pension and a 50 percent share of
      the state pension earned during the marriage, 40 percent of the
      remaining settlement from a personal injury action brought by the
      parties after the defendant's injury in an accident, and part of the
      property that the defendant brought into the marriage. The
      defendant appealed the parenting time award and distribution of
      property, and the plaintiff cross-appealed the distribution of the
      personal injury settlement.

      The Court of Appeals held:

      1. The circuit court committed legal error by failing to award
   the defendant specific parenting time with the children when the
   defendant orally requested specific parenting time after the
   court's decision but before the judgment was entered. MCL
   722.27a(7) requires that parenting time be granted in specific
   terms if requested by either party at any time. An award of
   "reasonable and liberal parenting time" to the defendant is not an
   award of specific parenting time. MCR 2.119(A)(1) requires that a
   motion be made in writing unless made during a hearing or trial,
   as in this case. The statute and the court rule required that the
   court consider the request for specific parenting time in a fre-
   quency, duration, and type reasonably calculated to promote a
   strong relationship between the children and the defendant. The
   parenting time provision of the judgment must be vacated.

      2. The circuit court did not err in awarding the plaintiff 100
   percent of the survivorship interest in the defendant's pension and
   50 percent of the portion of the pension earned during the
   marriage. The circuit court properly found that a right to vested
   pension benefits accrued by a party during the marriage must be

considered a part of the marital estate subject to award upon divorce. There are numerous ways in which pension benefits may be distributed through either the property division or the award of alimony. The security of the family is the paramount concern, and a court may use any property of either party to achieve a just and reasonable property division after considering the equities of the case. The circuit court determined that without part of the pension, the plaintiff's portion of the marital estate would be insufficient to maintain her.

3. The circuit court neither abused its discretion by awarding the plaintiff a 40 percent share of the personal injury settlement of the defendant's injuries nor erred in not dividing the settlement equally. Proceeds from a personal injury suit meant to compensate for pain and suffering are not joint marital property. However, a personal injury settlement may be treated as marital property where, as here, the original action included a claim of loss of consortium and the proceeds were treated as marital property.

4. The circuit court did not err in failing to award the defendant credit for alleged separate assets he brought into the marriage. When the parties have commingled their separate property or used it for joint purposes, a court will consider the parties' intent in determining whether the assets should be included in the marital estate. The alleged separate assets were commingled as joint assets over the parties' 22 years of marriage and had lost their characteristic of being separate property.

5. The circuit court properly enforced an agreement relating to gifts and inheritances. Those gifts that were jointly received were deemed to be marital property. Those that were separately received by one party were deemed to be separate property.

Judgment vacated in part and affirmed in part; case remanded for entry of a specific order for parenting time.

DIVORCE — CHILD CUSTODY — PARENTING TIME — SPECIFICITY.

An award of parenting time to the noncustodial parent must be in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent being granted the parenting time and, upon request, must be specific (MCL 722.27a).

*Lynch, Gallagher, Lynch, Martineau & Hackett, P.L.L.C.* (by *Jennifer M. Galloway*), for the plaintiff.

*Gregory G. Justis* for the defendant.

Before: HOEKSTRA, P.J., and JANSEN and KELLY, JJ.

KELLY, J. Defendant appeals as of right, challenging several property distribution and parenting time provisions of the judgment of divorce entered by the trial court. Plaintiff cross-appeals, challenging the distribution of certain personal injury settlement proceeds.

## I. BASIC FACTS

The parties married in November 1979. Two children were born of the marriage. During the marriage, defendant was the primary wage earner. While the plaintiff was employed in the early years of the marriage, beginning in 1994, she acted as the primary caregiver for the children.

In 1995, defendant was in a severe bicycle accident, sustaining a broken clavicle, broken wrist, broken collarbone, and a closed head injury. Both parties were named as plaintiffs in a civil action arising from the accident, defendant claiming personal injuries and plaintiff claiming loss of consortium.[1] Two years after the accident, defendant took disability retirement, electing 100 percent survivorship benefits. In the same year, the parties entered into a marital agreement at the request of defendant's parents. The primary purpose of the agreement was to ensure that defendant's expected substantial inheritance would remain his personal property.

Plaintiff filed for divorce in June 2000. The parties lived together until February 2001, when a personal protection order was filed against defendant and removed him from the home. Both parties sought physical custody of the two children. At the time of the trial, the

---

[1] The lawsuit was settled in 1997.

parties followed a parenting schedule loosely resembling that recommended by the Friend of the Court, i.e., defendant exercising his parenting time every other weekend and Wednesday evenings. However, parenting time did not proceed smoothly, and defendant faulted plaintiff for not encouraging the children to spend time with him. Both parties agreed that since the divorce was filed, defendant and his daughter have had a very strained relationship.

After trial, the trial court issued a lengthy written decision dividing the property, awarding custody to plaintiff, and awarding "reasonable and liberal parenting time" to defendant. After the decision was issued, but before a judgment was entered, defendant orally moved for specific parenting time. The trial court denied the motion, finding that defendant's motion was "a motion for reconsideration of a judgment that has not been entered yet."

After the final judgment was entered, defendant appealed, and plaintiff cross-appealed. At issue is the parenting time provision, the division of the settlement proceeds, the survivorship interest in defendant's pension, and the effect of premarital assets and the 1995 marital agreement on the property division. We vacate the parenting time provision in the judgment of divorce and remand for consideration of a specific parenting time order relating to the parties' son.[2] In all other respects, we affirm.

## II. SPECIFIC PARENTING TIME

Defendant first argues that the trial court committed legal error by failing to consider awarding him specific

---

[2] The parties' daughter has reached the age of majority and any issue regarding parenting time with her is moot.

parenting time with the children. We agree. Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue. MCL 722.28; *Harvey v Harvey,* 257 Mich App 278, 283; 668 NW2d 187 (2003). "A court commits legal error when it incorrectly chooses, interprets, or applies the law." *Schoensee v Bennett,* 228 Mich App 305, 312; 577 NW2d 915 (1998).

Parenting time is governed by statute. In particular, MCL 722.27a provides in relevant part:

> (1) Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents. *Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.*

> \* \* \*

> (3) A child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health.

> \* \* \*

> (7) *Parenting time shall be granted in specific terms if requested by either party at any time.* [Emphasis added.]

When a statute's language is clear and unambiguous, this Court must assume that the Legislature intended its plain meaning and enforce the statute as written. *People v Morey,* 461 Mich 325, 330; 603 NW2d 250 (1999).

When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. Because the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute. [*Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002) (citations omitted).]

Words that are not defined by a statute will be given their plain and ordinary meanings, and a court may consult dictionary definitions when ascertaining such a meaning. *Id.* "Specific" is defined as "[e]xplicitly set forth; particular; definite." *American Heritage Dictionary, Second College Edition* (1982). "Reasonable and liberal parenting time" is plainly *not* a grant of parenting time in "specific" terms. Nor can it be said to be parenting time in "a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent . . . ." MCL 722.27a(1). Particularly here, where defendant offered significant testimony about the difficulties he had in securing parenting time with his children, the plain language of the statute required the trial court to consider all relevant factors and craft a specific parenting time order that would have ensured parenting time while still maintaining enough flexibility to accommodate the children's schedule. The trial court erred in failing to do so.

Plaintiff argues that the trial court did not err in denying specific parenting time because defendant did not move for parenting time in writing and did not wait until judgment had been entered. We disagree. MCR 2.119(A)(1) requires that a motion must be made in writing "[u]nless made during a hearing or trial . . . ."

Here, the oral motion was made during a hearing to resolve objections to the proposed judgment and to clarify aspects of the trial court's written opinion. Moreover, the plain language of MCL 722.27a(7) provides that a request for specific terms regarding parenting time can be made "at any time." Thus, requests for specific parenting time terms must be considered by the court regardless of the timing of the request. Accordingly, once defendant moved for specific parenting time, the trial court erred, as a matter of law, in refusing to consider specific terms for parenting time "in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time," subject to the mandates of MCL 722.27a.

Therefore, we vacate the parenting time provision of the judgment of divorce and remand this case to the trial court with the direction to consider a specific parenting time order relating to the parties' son.

### III. SURVIVORSHIP INTEREST

Next, defendant argues that the trial court erred in awarding plaintiff 100 percent of the survivorship interest in his state pension. We disagree. In divorce actions, findings of fact made in relation to the division of marital property are reviewed under the clearly erroneous standard. *Sparks v Sparks,* 440 Mich 141, 146; 485 NW2d 893 (1992). The court's dispositional ruling should be affirmed unless this Court is left with the firm conviction that the division was inequitable. *Sands v Sands,* 442 Mich 30, 34; 497 NW2d 493 (1993). Questions of law are reviewed de novo. *Kelly v Builders Square, Inc,* 465 Mich 29, 34; 632 NW2d 912 (2001).

A right to vested pension benefits accrued by a party during the marriage must be considered part of the

marital estate subject to award upon divorce. MCL 552.18(1); *Vander Veen v Vander Veen,* 229 Mich App 108, 110-111; 580 NW2d 924 (1998). However, treatment of pension benefits may vary. Depending on the equities and the circumstances, pensions may be distributed through either the property division or the award of alimony. *Magee v Magee,* 218 Mich App 158, 164-165; 553 NW2d 363 (1996). Methods of valuation and distribution of pension interests may also vary. *Boyd v Boyd,* 116 Mich App 774, 782; 323 NW2d 553 (1982) (opinion by BRONSON, J.). Although pension benefits that accrued both during and before or after the marriage should generally be allocated on the basis of the ratio of the years the parties were married while the employed spouse earned the pension to the total years in which the employed spouse worked to accrue the pension, *Vander Veen, supra* at 113, we have also held that pension benefits accrued before marriage may be the subject of a division of property. *Booth v Booth,* 194 Mich App 284, 291; 486 NW2d 116 (1992). We have noted that QDROs[3] routinely contain provisions designating an ex-spouse as a surviving spouse, entitling the ex-spouse to survivorship rights in a former spouse's pension. *Roth v Roth,* 201 Mich App 563, 566; 506 NW2d 900 (1993). The security of the family is the paramount concern, and a court may use any property of either party to achieve just and reasonable property division after considering the character and situation of the parties, and all the other circumstances of the case. *Booth, supra* at 290, quoting *Rogner v Rogner,* 179 Mich App 326, 329-330; 445 NW2d 232 (1989).

The judgment of divorce awarded plaintiff a 50 percent share of defendant's state pension that was earned during the course of the marriage. Defendant

[3] Qualified Domestic Relations Orders.

was awarded a 50 percent share of the pension that was earned during the course of the marriage and the entire value for the portion of the pension that was earned before the marriage. Plaintiff's designation as the surviving spouse on the pension was retained, entitling her to defendant's entire pension and health care insurance upon defendant's death. Because of the survivor benefit, the monthly payments received by both parties are approximately nine percent less than without the benefit.

The portion of the pension earned during marriage is clearly marital property. MCL 552.18(1); *Vander Veen, supra* at 110. The survivor benefit was elected during the marriage. Part of the pension, however, was earned before the marriage. This is appropriately reflected in the lower monthly benefit received by plaintiff. Defendant, then, correctly asserts that he is bearing a slightly greater burden of the survivor benefit. However, with the security of the family as a primary concern, a court can use property of either party to achieve just and reasonable support after taking into consideration the parties' ability to pay, the character and situation of the parties, and the circumstances of the case. MCL 552.23(1); *Booth, supra* at 290. Moreover, the division of property need not be mathematically equal, but must be equitable. *McDougal v McDougal,* 451 Mich 80, 88; 545 NW2d 357 (1996). Here, the trial court reviewed information regarding the effect of the survivor benefit on both parties. The court also heard testimony that the unemployed plaintiff was faced with no medical coverage, COBRA[4] benefits costing her $560 a month, and a personal retirement savings of $25,000. Finally, the trial court determined that plaintiff's portion of the

---

[4] Consolidated Omnibus Budget Reconciliation Act of 1985, 29 USC 1161 *et seq.*; which amended the Employee Retirement Income Security Act (ERISA), 29 USC ch 18.

marital estate would be insufficient to maintain her. We are not left with the firm conviction that the court's invasion into defendant's separate property was inequitable. *Sands, supra* at 34.

Defendant also argues that the court did not value and divide the intact value of the survivorship interest, i.e., its total projected value to plaintiff if defendant predeceased her. However, under the circumstances presented in this case, we find that such a survivorship interest need not be valued. The pension was already in pay status with the election of survivorship benefits having previously been made by the parties. Defendant's argument that he should be awarded property to offset the value of the survivorship benefits would result in potentially inequitable results. Plaintiff's award would consist of a potential annuity payment, which would be effectively worthless or of low value if she predeceased defendant or defendant lived longer then expected, while defendant's award would be unaffected. And, as we note above, the trial court did consider evidence regarding the effect of the survivor benefit on both parties. Accordingly, we discern no error requiring reversal.

### IV. SETTLEMENT PROCEEDS

Next, defendant argues that the trial court abused its discretion by awarding plaintiff a 40 percent share of a personal injury settlement, and plaintiff cross-appeals, arguing that the court erred in not dividing the settlement equally. We disagree. Proceeds from a personal injury suit meant to compensate for pain and suffering are not joint marital property. *Bywater v Bywater*, 128 Mich App 396, 398; 340 NW2d 102 (1983). Nonetheless, those proceeds can be distributed pursuant to MCL 552.23 and MCL 552.401. *Lee v Lee,* 191 Mich App 73,

78; 477 NW2d 429 (1991). Moreover, a personal injury settlement may be treated as marital property where the original action included a loss of consortium claim and the settlement check was made payable to both parties and treated by the parties as marital property. *Wilson v Wilson*, 179 Mich App 519, 521, 524; 446 NW2d 496 (1989).

Both parties were named as plaintiffs in the civil action arising from defendant's bicycle accident, with defendant claiming personal injuries and plaintiff claiming loss of consortium. The lawsuit was settled for $500,000 in 1997, resulting in a net payment to the parties of $334,433.[5] Evidence produced at trial indicated that a joint settlement check was issued to the parties, and the proceeds were put into a joint account. The evidence also established that the proceeds were used to pay taxes, pay car insurance, pay the remainder of the home mortgage, purchase a family car, and pay off debt. The trial court also found that a portion of the settlement was used to pay medical expenses. After reviewing the evidence of how the settlement proceeds were actually used by the parties, it found that "[t]he settlement proceeds were treated by the parties as a joint marital asset," and determined that of the remaining funds "the husband should receive 60% of the $278,260 ($166,956) because he will suffer more into the future. Also, the estate is otherwise insufficient to adequately maintain the wife. She shall receive 40% of the $278,260 ($111,304)."

---

[5] The designation of the settlement proceeds as compensation for pain and suffering versus lost wages or loss of consortium is unclear. Defendant testified that the settlement was for his personal injuries and plaintiff's loss of consortium claim. A release provision signed by both parties indicates that the entire settlement was for pain and suffering. Defendant, however, admits that such settlements are usually so designated to avoid income tax liability.

Given the parties' use of the proceeds, it was not error for the court to conclude that the property was a joint asset at the time of the award or has become a joint asset because it has been commingled. In light of the fact that part of the proceeds were used to pay medical expenses, it was not improper for the court to conclude that a portion of the settlement should compensate defendant's future pain and suffering. The trial court heard a considerable amount of testimony regarding the ongoing medical challenges faced by defendant as a result of the accident. The trial court properly divided the personal injury settlement as part of the marital estate, and the 60-40 split was equitable in light of defendant's continuing medical problems and the insufficiency of the marital estate to support plaintiff.

### V. PREMARITAL ASSETS

Next, defendant argues that the trial court erred by failing to award defendant credit for separate assets he allegedly brought into the marriage. We disagree. The trial court should include all property that came "to either party by reason of the marriage" as part of the marital estate. MCL 552.19.

Of the $22,000 of personal assets defendant claims he brought into the marriage, $19,876 is alleged to be equity in the parties' first home. Defendant funded the purchase of the property and the down payment on a home that the parties built together before the marriage. The parties moved into the home when it was completed one month before their marriage. The parties resided in the home for approximately fifteen years, paying the mortgage and making improvements with marital funds. The home was eventually sold, and the proceeds were reinvested in a new marital home that was jointly titled. Under the circumstances, we con-

clude that the trial court properly found that plaintiff's alleged contribution lost any characteristic of being separate property.

The other alleged personal assets were primarily cash. These were commingled with marital property or set off by the parties' investment into defendant's master's degree. The trial court did not err when it concluded that these assets were "commingled as joint assets" over the parties' 22 years of marriage and constituted marital property.

### VI. MARITAL AGREEMENT

Finally, defendant argues that the trial court failed to enforce the marital agreement. We disagree. Contract interpretation involves issues of law that we review de novo. *Sands Appliance Services, Inc v Wilson*, 463 Mich 231, 238; 615 NW2d 241 (2000). When interpreting a contract, the cardinal rule is to first ascertain the intent of the parties. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 475; 663 NW2d 447 (2003). This Court reads the agreement as a whole and attempts to apply the plain language of the contract itself to enforce the parties' intent. *Old Kent Bank v Sobczak*, 243 Mich App 57, 63; 620 NW2d 663 (2000).

The parties entered into an agreement in November 1995 at the request of defendant's parents. The agreement was drafted primarily to ensure that defendant's expected inheritance would remain his personal property, but it also covered gifts given to the parties. The agreement states in pertinent part:

> [Defendant and plaintiff] are married. [Defendant] may inherit a sizable amount from his parents. [Plaintiff] may also inherit property from her parents. They each desire to hold property acquired by gift or inheritance separate and apart . . . .

\* \* \*

> Each party has indicated on the attached Exhibit which assets were received by gift or inheritance. Each party shall keep that property and any property acquired in the future by gift or inheritance as separate property.

A list of specific items covered by the agreement appears to have been misplaced; defendant attempted to recreate the list.

The court enforced the agreement making specific awards of personal property. The court heard testimony that some gifts, such as flatware and a $10,000 gift from defendant's parents, which was applied to the home mortgage, were given to the parties jointly. The court concluded that these gifts were marital assets subject to division. The court also heard testimony that defendant's captain's chair, workbench, and coin collection were individually given to him and accordingly awarded these to him in the judgment. Similarly, the court heard testimony that certain items of jewelry were given to plaintiff as gifts and accordingly awarded these to her in the judgment. The trial court did not err in enforcing the parties' contract.

We vacate the parenting time provision of the judgment of divorce and remand this case to the trial court for entry of a specific parenting time order relating to the parties' son. In all other respects, we affirm. We do not retain jurisdiction.